BAUDISTEL *v.* RECORDER AND COMMON COUNCIL OF CITY OF JACKSON.

CERTIORARI—VACATION OF STREET—ESTOPPEL.

*Certiorari* will not lie at the instance of a property owner to review the action of the common council of a city in discontinuing and vacating a part of one street and laying out and establishing another upon the property of a railroad company, where the company made expenditures in furtherance of the proposed change, and the petitioner, though fully cognizant of the proceedings and of the expenditures, did not apply to the court to restrain the same.

*Certiorari* by William Baudistel and others to review the action of the recorder and common council of the city of Jackson in vacating a portion of a street. Submitted May 1, 1896. Writ dismissed July 28, 1896.

The purpose of this proceeding is to review the action of the common council of the city of Jackson in discontinuing and vacating a part of one street and laying out and establishing another. The facts as set forth in the petition for the writ are substantially these:

The petitioners Neiss owned and occupied one-half of a lot in block 44, on the corner of Railroad and Van Dorn streets. Petitioners Baudistel owned and occupied a portion of lot 4 of block 44, near the corner of Railroad and Perrine streets, and also lot 2 of block 45, at the corner

of the same streets. The situation of the property will be best seen by a reference to the accompanying plat.

February 4, 1895, the following resolution was adopted by the common council:

"*Whereas*, the property immediately adjoining the railroad right of way on the south side, in front of the passenger station, between Park avenue and Milwaukee street, is now vacant and unoccupied; and,

"*Whereas*, a street connecting Park avenue and Milwaukee street, adjoining the railroad on the south, would furnish a very convenient and desirable means of approach from the south-easterly part of the city to Main street and the business portion of the city, and would avoid danger and inconvenience of the Park-avenue crossing, which of necessity, on account of the location of the railroad station, is so often obstructed, and such new street, in connection with Elizabeth street, would avoid any crossing of the railroad tracks whatever, and in case the Grand river should be bridged at Columbus street, which has been contemplated, such new thoroughfare would be still more important and convenient:

"*Resolved*, that the committee on streets be requested to examine the location, and report as to the ownership of the property, and the probable terms upon which it could be acquired, and submit a report and map of the land necessary for a street four rods or less in width connecting said Park avenue and Milwaukee street, adjacent to the right of way."

March 4th the committee reported that they had conferred with the railroad company, and that it would give the necessary land for such street 54.3 feet wide, would grade and prepare the street for public travel, and would build a sidewalk along the south side, on condition that the council would vacate that portion of Park avenue extending from the continuation of the north line of the porch of the depot to the south line of the railroad right of way. On April 4th a resolution was adopted to the effect that such action would be for the interest of the city, and authorizing an application to be made to the proper court for that purpose. April 15th Mr. Baudistel and several others filed a protest against

A PORTION OF THE, CITY OF JACKSON, MICH., Showing Streets Crossing the Mich. Central Railroad As they existed 1894.

such action. At the same meeting the railroad company presented an offer consenting to the vacation of that portion of Park avenue, and stated that it was the only party interested therein within the meaning of the charter of the city of Jackson, and in the same communication offered to open the new street. On June 3d the committee on streets made a report advising the acceptance of the proposition. Meanwhile the work was carried on, · and the company put fences across Park avenue in accordance with the agreement. August 22d it presented to the council a deed of conveyance of this strip of land for the new street, and it was opened and dedicated to the public. On August 14th, after the fences had been erected, the petitioners and others filed another protest with the common council. Nothing further was done until February 17, 1896, when this petition was presented to the court.

The answer admits the proceedings as set forth in the petition, and claims:

1. That the action of the common council is legislative in its character, and cannot be reviewed on *certiorari*.

2. That petitioners have no rights affected by such action, except such as are common to the public.

3. That they are not entitled to the relief asked, by reason of their delay.

It further sets forth the situation of the streets in that vicinity, and their connection with one another and the business portions of the city. The depot has been situated in its present location for 20 years. It is next to Main street, which leads to the main business portion of the city to the west. Railroad street has never been opened for the passage of teams any farther than the railroad track during this time. An old sidewalk has existed along the south side of block 43, over which foot passengers have traveled, and by means of which they have crossed the railroad tracks leading into Park avenue. Main street crosses the track and right of way of the railroad at its intersection with Milwaukee street, Main street extending east and west and Milwaukee street north and

south. Previous to the closing of the Park-avenue cross-
ing, the intersection of Main and Milwaukee streets had
been very much incumbered by trains of the company, on
account of the short distance between Main street and
Park avenue. Since this change was made, the Main
and Milwaukee street crossing has been kept clear from
obstructions by trains standing upon it. The other im-
provements contemplated in connection with the vacation
of this portion of Park avenue, including the construction
of the bridge across the Grand river on Columbus street,
have been completed. The entire space between the
depot and Main street is, and always has been, open to
public travel, and a free and open driveway has always
existed from Park avenue and Elizabeth street along the
northerly line of the depot to Main street. The Park-
avenue crossing was dangerous to both foot passengers
and teams. Engines pass over it 370 times every 24
hours, and many times that number of cars. The city of
Jackson is the end of one division of the road, and trains
are there supplied with fresh engines, which come from
the east, where are located the roundhouse and the repair
shops. The railroad company expended $15,500 in the
purchase and improvement of this new street. Other
reasons are given in the answer to show the benefit
derived by the general public through this change.

The authority for the action of the common council is
based upon the following provision in the charter:

"If for any reason the common council shall deem it
for the interest of the city to alter or vacate any plat of
lands in said city, or any part of the same, or any street,
alley, or public grounds, or any part of the same, it shall
have power, equally with the owner or owners of the
lands platted, to apply to the circuit court of the county
for such alteration or vacation, and it shall be a sufficient
interest in that part of the plat to authorize such an
application if it shall appear that the part of the street,
alley, or public grounds on the plat proposed to be altered
or vacated has been dedicated to the public: *Provided*,
That if all persons interested in the entire plat, or a dis-

tinct part thereof, shall file with the common council their written consent to its vacation, then the common council shall have power to vacate the same by resolution."

*Richard Price*, for plaintiffs in *certiorari*.

*William E. Ware*, City Attorney, for defendants in *certiorari*.

GRANT, J. (*after stating the facts*). Only one legal question is involved in this controversy, viz., has the common council of the city of Jackson the right to vacate a portion of a public street upon the assent of all the adjoining landowners? To state the question otherwise, it may be put thus: Has any member of the traveling public, or one who does not own adjoining lands, any such interest as requires the proceeding to be instituted in the courts for the purpose of vacating a part of a plat or street? It is manifest that those living north of the railroad and east of the depot are not inconvenienced by the change in their access to the main business part of the city. The principal part of the city lies west of the depot. Some of those living north of the railroad and west of Park avenue, and between the next street east crossing the railroad north and south (which is not shown by the record), are obliged to travel a few hundred feet farther to reach that part of the city lying directly south of the railroad between these points. There is nothing to show that the common council did not act in entire good faith. It is apparent from the answer that the interests of the general public, when the safety and delay of travelers and business are considered, have been subserved. These were important considerations. In neither of the protests which were filed did the petitioners question the authority of the common council to act as they did.

Now, the writ of *certiorari* is not a writ of right. It is a discretionary writ, and will not be used to enforce a strict legal right where justice cannot be done, and

where the petitioners are guilty of laches in failing to take prompt action. The petitioners were all the time fully cognizant of the proceedings of the council, and of the expenditures being made by the railroad company in furtherance of the proposed change, and yet they applied to no court to restrain such action. It is unnecessary to cite the many decisions of this court to the effect that where parties have stood by and seen public improvements made, and money expended, upon the faith of the validity of the proceedings, they cannot invoke the conscience of the court, or make use of discretionary writs, to enforce their legal remedies.

For this reason the writ was improvidently issued, and will be dismissed, with costs.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.